UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS ROBINSON,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF SAN JOSE, et al.,<br><br>    Defendants. | Case No. 19-cv-06768-NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 46 |

In this excessive force case brought by Plaintiff Nicholas Robinson, Defendants the City of San Jose and its police officers Ryan Dote, Jaime Kulik, and Nicholas Petterson move for partial summary judgment on all of Robinson's claims, except his excessive force claim against Officer Dote. The Court finds that under Robinson's version of the disputed material facts, a reasonable jury could find that officers Petterson and Kulik violated Robinson's Fourth Amendment right under 42 U.S.C. § 1983 to be free from excessive force and that those rights were clearly established at the time of the incident. There are too many disputed material facts about the level of Petterson and Kulik's use of force. As such, the Court declines to rule on qualified immunity at this stage.

However, the Court does not find that a reasonable jury could find in Robinson's favor on his *Monell* claims against the City of San Jose, or on his claims for denial of medical care under the Fourth Amendment, and substantive due process under the Fourteenth Amendment. Therefore, Defendants' partial motion for summary judgment is

GRANTED IN PART and DENIED IN PART.

## I.     BACKGROUND

### A.     Undisputed Facts

The following facts are viewed in the light most favorable to Robinson, the non-movant, and are undisputed unless otherwise indicated. On November 29, 2018, San Jose police officers approached a dark homeless encampment as part of a "community policing foot patrol" in search of trespassing and illegal camping. *See* Dkt. No. 46-2 ("Petterson Depo.") at 34:3–35:6; Dkt. No. 46-5 ("Neumer Decl."), Ex. A Body Cam Video X81280597 ("Petterson Body Cam"). Plaintiff Nicholas Robinson stood at the area abutting the 101 Southbound Freeway ramp at Westbound Story Road in San Jose. *See generally* Petterson Body Cam. When the officers saw Robinson, he remained on the sidewalk and did not walk toward the officers. *See id.* at 00:23. Robinson used a flashlight in the darkness, and as police officers approached him, Robinson's flashlight shined directly at the officers' eyes. *Id.* The officers approached Robinson and ordered him to turn his flashlight off. *See* Petterson Depo. at 59:12–19; Petterson Body Cam at 00:36. The parties dispute how and whether Robinson complied with the officers' request.

The officers ordered Robinson to leave the area, but Robinson did not comply. *See* Petterson Body Cam at 00:45. Robinson explained to the officers why he would not leave the area. *Id.* at 00:59. After Robinson gestured toward the encampment and toward the officers again using his flashlight, Officer Dote attempted to take the flashlight. *Id.* at 1:10. The officers engaged in a takedown maneuver to force Robinson to the ground. *See id.* The parties also disagree on each officer's level of force in the takedown maneuver, as well as which officers were involved in initiating the takedown.

Officer Dote and Officer Petterson grabbed both of Robinson's arms and placed him in a rear wrist-lock hold without announcing that he was under arrest. *See* Petterson Body Cam at 1:19; *see also* Petterson Depo. at 69:12–24. Once Robinson was on the ground, Officer Petterson had a knee on Robinson's leg and held Robinson's hands behind his back, while Officer Kulik placed Robinson in handcuffs. *See* Petterson Body Cam at

2

1:15–1:35; Dkt. No. 47-1 ("Farzam Decl."), Ex. G ("Police Report") at 8, 10, 16, 20; Dkt. No. 46-1, Ex. 1 ("Kulik Depo.") at 68:12–22, 74:8–17.

Once on the ground, Robinson complained of pain, stated that his left arm was injured, and that he needed to go to the hospital. *See* Petterson Body Cam at 2:23; *see also* Neumer Decl., Ex. B Body Cam X81078885 ("Ikeuchi Body Cam") at 2:47. Another officer, Officer Ikeuchi, radioed to request emergency medical services for Robinson. *See* Ikeuchi Body Cam at 3:50.

The officers ultimately arrested and booked Robinson for resisting, interfering, or delaying a public officer's duties under Cal. Pen. Code § 148(a)(1). *See* Police Report at 4; Dkt. No. 46 ("MSJ") at 8. Robinson suffered serious injuries because of the takedown maneuver, including a broken left humerus bone where his upper arm meets the elbow, potential nerve damage, a black eye, body and facial bruising, and lacerations. *See* Farzam Decl., Ex. B "Robinson Depo." at 99:3–4, 121:7–13, 136:23–137:9.

**B. Procedural History**

Plaintiff Nicholas Robinson filed this case on October 18, 2019, bringing claims under 42 U.S.C. § 1983 for excessive force, denial of medical care, and substantive due process against both the City of San Jose, and the individual officer defendants Ryan Dote, Jaime Kulik, and Nicholas Petterson. Dkt. No. 1 ("Compl"). Plaintiff also brought *Monell* liability claims under 42 U.S.C. § 1983 for ratification, inadequate training, and unconstitutional custom, practice, or policy against the City of San Jose. *Id.* Defendants moved for partial summary judgment on claims 2, 3, 4, 5, and 6 of Robinson's complaint, and on claim 1 as against Petterson and Kulik. *See* MSJ. Robinson timely opposed the motion and Defendants filed a reply. Dkt. Nos. 47 ("Opp'n"), 48 ("Reply"). All parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 10, 11.

**C. Evidentiary Objections**

Defendants submit factual corrections and evidentiary objections to Plaintiff's exhibits A, E, F, G, I, and J, in response to Plaintiff's opposition brief. *See* Reply at 3.

1   First, because Defendants only cite the Federal Rules of Evidence for each objected exhibit
2   without providing further justification, the Court OVERRULES each evidentiary
3   objection. *See* Reply at 2. The Court will not assume the rationale behind each
4   evidentiary objection.[1] The Court's ruling is without prejudice to raising the objections in
5   a motion in limine. Second, Plaintiff's various names for different body cam footage are
6   derived from the timestamps on the videos submitted by Defendants themselves. *See*
7   Neumer Decl., Exs. A, B.[2] Each video shows the body cam footage worn by a different
8   officer. Contrary to Defendants' assertion, these footage labels do appear in the record.
9   Plaintiff's Exhibit A to Farzam's Declaration is the same video clip as Defendant's Exhibit
10  A of Neumer's Declaration; except that Plaintiff's Exhibit A is a shortened version which
11  censors the officers' faces. *See* Farzam Decl., Ex. A Body Cam Footage ("Petterson Body
12  Cam Redacted"); *compare* Neumer Decl., Ex. A Body Cam Footage X81280597. Third,
13  noting that Robinson misrepresents the evidence about use of force highlights that there
14  may be disputes of material fact about what the footage of the incident shows.

## II.    LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

---

[1] The Court addresses Defendants' additional arguments against admissibility for Plaintiff's Use of Force data and reports in section D.2.b. below.
[2] Neumer's declaration erroneously switches the labels of the officers wearing each body cam, but the video files themselves correctly label the videos. Neumer Decl. Ex. A contains Petterson's Body Cam footage, Ex. B contains Ikeuchi's Body Cam footage.

4

1    The moving party bears the burden of identifying those portions of the pleadings,
2    discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.
3    *Celotex*, 477 U.S. at 323.  Once the moving party meets its initial burden, the nonmoving
4    party must go beyond the pleadings, and, by its own affidavits or discovery, set forth
5    specific facts showing that a genuine issue of fact exists for trial.  Fed. R. Civ. P. 56(c);
6    *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v.
7    Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)).  All justifiable inferences, however,
8    must be drawn in the light most favorable to the nonmoving party.  *Tolan*, 572 U.S. 651
9    (citing *Liberty Lobby*, 477 U.S. at 255).

## III.  DISCUSSION

Plaintiff's complaint alleges a total of six claims.  Plaintiff first alleges three claims against Defendants Dote, Petterson, and Kulik under 42 U.S.C. § 1983 for (1) excessive force in violation of the Fourth Amendment; (2) "denial of medical care" in violation of the Fourth Amendment; and (3) substantive due process.  *See* Compl. ¶¶ 22–52.  Next, plaintiff also alleges three claims against Defendant the City of San Jose for municipal liability for (4) ratification, (5) inadequate training, and (6) unconstitutional custom, policy, or practice.  *See id.* ¶¶ 53–90.  Defendants move for partial summary judgment on claims 2, 3, 4, 5, and 6, as well as claim 1 only against Defendants Petterson and Kulik.  *See* MSJ at i.  Defendants do not move for summary judgment on the excessive force claim against Dote.

### A.  Excessive Force and Qualified Immunity – Claim 1

The first and primary issue is Robinson's claim under 42 U.S.C. § 1983 that Officer Petterson and Officer Kulik violated Robinson's Fourth Amendment rights by using excessive force against him.  Defendants Petterson and Kulik move for qualified immunity on this issue, asserting that no constitutional violation occurred under clearly established law.  *See* Reply at 9–11.  Robinson disagrees, asserting that his version of the facts depict a Fourth Amendment violation under the objective reasonableness principles articulated in *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Opp'n at 12.  The Court agrees that

*Graham* and cases applying it provide the framework for assessing Petterson and Kulik's conduct. Under these principles, the Court finds that Petterson and Kulik's level of involvement with the "takedown" maneuver, restraint, and handcuffing present a genuine dispute of material fact.

Because an inquiry into excessive force "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," the Ninth Circuit has held "on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002). The Court will evaluate each alleged use of force separately. There are two types of force at issue: first, Petterson's assistance in Dote's "takedown" maneuver, and second, the method in which Petterson and Kulik restrained and handcuffed Robinson.

### 1. Takedown

The parties dispute the following facts leading up to the takedown maneuver: after Officer Dote approached Robinson and directed him to divert his flashlight away from their eyes, Robinson claims that he complied within seconds and pointed the flashlight toward the ground, while Officer Petterson interrogated him and shined his own flashlight in Robinson's eyes. *See* Petterson Body Cam Redacted at 00:20. After asking him to move along, Robinson claims that he held the flashlight loosely in his left (non-dominant) hand, and gestured to the homeless encampment and then back toward Officer Dote. *See* Petterson Body Cam Redacted at 00:30–00:53. Defendants claim that Robinson defied multiple orders to stop shining his flashlight at them, *see* MSJ at 9; Dote Depo at 44:5–9; Dkt. No. 46-2 at 59:16–23, and that he actively refused to leave the area of the officers' ongoing investigation, *see* Robinson Depo. at 89:21–90:11.

When Robinson gestured his flashlight toward Dote, Dote attempted to take the flashlight, and Defendants claim that Plaintiff resisted the attempt by moving the light to his other hand. *See* Petterson Body Cam at 1:05–1:10. Robinson states that he lowered the flashlight before Officer Dote even spoke, and immediately replied that he would put his flashlight away. *Id.* at 1:05. Robinson's account of the takedown is that Dote grabbed his

left arm while Petterson grabbed Robinson's right arm. *See* Petterson Depo. at 69:17–24. Robinson also claims that he did not try to pull or remove his arms from their grasp, *see* Robinson Depo. at 102:21–24, and that Dote forced Robinson face-first into the cement sidewalk, *see* Petterson Body Cam at 1:15–1:35. Petterson testified that he assisted in the takedown by "pull[ing] the suspect's right arm behind his back and appl[ying] downward pressure to push him toward the ground." Petterson Depo. at 111:20–25. Finally, Robinson states that as both Dote and Petterson held him on the ground, he heard a "crack[ing]" sound." Petterson Body Cam at 1:18; Robinson Depo. at 106:21; 114:20.

      Defendants claim that the level of force used was minimal and reasonable. Although Officer Petterson held Robinson's arm when Officer Dote initiated the takedown maneuver, Petterson claims he did not initiate or cause the maneuver. *See* Ikeuchi Body Cam at 1:30–1:40; Petterson Depo. at 67:23–68:4. Petterson testified that he did not know Dote was going to conduct the takedown, nor did he communicate with Dote beforehand about his intention to do so. Petterson Depo. at 73:3–11. According to Defendants' account of the body cam footage, at worst, Petterson's force "consisted of holding plaintiff and applying pressure designed to control his movements and guide him downward." MSJ at 4; *see* Petterson Body Cam at 1:30–1:40; *see* Petterson Depo. at 67:23–68:4.

      According to Robinson, Dote also had a knee on Robinson's back while he lay compliantly on the ground. Petterson Body Cam at 1:15–1:35. Robinson further claims that *both* Dote and Petterson used their bodyweight to press the already injured Robinson into the cement sidewalk while applying continued pressure to his arms. *See* Petterson Body Cam at 1:15–1:35. Robinson argues that Petterson's takedown assist was objectively unreasonable because it was without notification or warning, and Robinson only committed a minor offense that did not pose an immediate threat or attempt to flee. *See* Opp'n at 13. Defendants claim that it was constitutional for Petterson to use force as necessary to effect Robinson's arrest under the circumstances. MSJ at 8.

    **2. Restraint and Handcuffing**

After the officers got Robinson on the ground, Petterson held Robinson's hands

7

behind his back, and Officer Kulik placed them in handcuffs. Petterson Body Cam at 1:20–1:40. Defendants claim that Kulik's involvement in Robinson's arrest is even more minimal because she did nothing more than put handcuffs on Robinson after he was already on the ground. MSJ at 10. According to Robinson's account, Dote stood aside and Officer Kulik joined Petterson in using a body weight restraint hold to place Robinson in handcuffs. *Id.* at 1:35; Opp'n at 14. As Kulik and Petterson ratcheted the handcuffs, Robinson audibly yelled in pain at the same time there was an audible crack from his arm. *Id.* at 1:38. Robinson continued to scream, *id.* at 2:20, and continued to inform Petterson and Kulik that he needed to go the hospital, *id.* at 3:00. Robinson claims at that point, Petterson and Kulik rolled him onto his right side, keeping him handcuffed behind his back, on the ground, until medical services arrived. *Id.* at 3:12. Defendants dispute that Petterson or Kulik used their body weight to hold Robinson down and that these facts are absent from Robinson's account of the incident in his deposition testimony and his complaint. Reply at 7.

Robinson argues that Petterson and Kulik's wrist-lock maneuver and body weight restraint holds were unreasonable. Opp'n at 14. He further argues that Kulik's tight handcuff restraints, long after Robinson's screams of pain and injury, were similarly unreasonable. *Id.* at 15.

### 3. Officer Petterson and Officer Kulik's Use of Force Is Disputed and Material

The Court finds that the amount of force used in both interactions is factually disputed and it is not clear that a reasonable fact finder could come to a single conclusion based on the video evidence. Therefore, it is not proper for adjudication at the summary judgment stage. The Court also finds that it is not appropriate to decide qualified immunity at this stage of the case. *See Glenn v. Washington County*, 673 F.3d 864, 870 (9th Cir. 2011) ("We express no opinion as to the second part of the qualified immunity analysis and remand that issue to the district court for resolution after the material factual disputes have been determined by the jury."); *Espinosa v. City & County of San Francisco*,

8

598 F.3d 528, 532 (9th Cir. 2010) (affirming a denial of summary judgment on qualified immunity grounds because there were genuine issues of fact regarding whether the officers violated plaintiff's Fourth Amendment rights, which were also material to a proper determination of the reasonableness of the officers' belief in the legality of their actions); *Santos*, 287 F.3d at 855 n.12 (finding it premature to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom").

If Defendants bring a post-trial motion for qualified immunity, it will then become Robinson's burden to define the violated right with specificity and show that the law is "clearly established" against the defendants at the time of the challenged conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1059–60 (9th Cir 2006); *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) ("Except in the rare case of an 'obvious' instance of constitutional misconduct (which is not presented here), Plaintiffs must 'identify a case where an officer acting under similar circumstances as [defendants] was held to have violated the Fourth Amendment.'") (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam)).

In sum, Robinson raises a triable issue of material fact on his excessive force claim against Petterson and Kulik. Because there is a triable question of fact about the extent of force each officer used to accomplish the takedown, restraint, and handcuffing, the Court DENIES Defendants' partial motion for summary judgment on Robinson's Fourth Amendment excessive force claim against Petterson and Kulik.

**B.  Denial of Medical Care – Claim 2**

Defendants argue that Robinson was not denied medical care in violation of the Fourth Amendment, and the Court agrees. *See* MSJ at 6. Both Robinson's and Defendants' evidence show that the officers asked for Robinson's identification and summoned emergency medical care shortly after Robinson complained of his arm hurting. *See* Ikeuchi Body Cam at 3:50; *see generally* Police Report. Further, Robinson does not

9

1   advance any argument against summary judgment for this claim and did not provide any
2   evidence in support. Thus, the Court GRANTS summary judgment in Defendants' favor
3   on Robinson's claim under section 1983 for denial of medical care in violation of the
4   Fourth Amendment.

### C. Substantive Due Process – Claim 3

Similarly, Defendants argue that Robinson's third claim for violation of his substantive due process rights also fails. According to Defendants, this claim is not cognizable as a matter of law because only the Fourth Amendment covers the type of conduct and claims at issue, whereas notions of substantive due process are embodied within the Fourteenth Amendment. *See* MSJ at 7; *see also Graham*, 490 U.S. at 396; *Tarabochia v. Adkins*, 766 F.3d 1115, 1129 (9th Cir. 2014). A substantive due process claim challenging the use of force can proceed only if neither the Fourth nor Eighth Amendments apply. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842–43 (1998); *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

Like with his denial of medical care claim, Robinson does not present any evidence in support of his substantive due process claim either. He simply fails to argue that the use of force constituted a deprivation of liberty without due process of law. Therefore, because his excessive force claim is not actionable, the Court GRANTS summary judgment on Robinson's substantive due process claim.

### D. Municipal Liability

In addition to the claims against Petterson, Kulik, and Dote, Defendants move for summary judgment on Robinson's claims for municipal liability against the City of San Jose. Robinson opposes the motion on these municipal liability claims, arguing that the City is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) for (1) ratifying the officers' conduct, (2) its failure to properly train officers, and (3) its custom of unconstitutional policing. *See* Opp'n at 17.

Under section 1983, a municipality is only liable when the alleged acts implement a municipal policy or custom in violation of constitutional rights. *See Monell*, 436 U.S. at

690. "Under *Monell*, municipalities are subject to damages under § 1983 in three situations: when the plaintiff was injured pursuant to an expressly adopted official policy, a long-standing practice or custom, or the decision of a final policymaker." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013). A plaintiff may also show that "an official policymaker either delegated policymaking authority to a subordinate or ratified a subordinate's decision, approving the 'decision and the basis for it.'" *Fuller v. City of Oakland, Cal*, 47 F.3d 1522, 1534 (9th Cir. 1995).

### 1. Ratification – Claim 4

As to Robinson's first theory of *Monell* liability, ratification occurs only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing a final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

Here, Robinson's argument consists solely of his claim that "[r]atification and deliberate indifference can be inferred by the SJPD's exoneration and collective approval of Dote and the other officers' use of force in this incident, despite clear body camera footage showing the unreasonableness of the force and Officer Dote's contemporaneous admission that Plaintiff was merely passively non-compliant." Opp'n at 17 (internal citations omitted).

There is precedent supporting the proposition that a supervisor's failure to investigate and discipline an officer may be probative of a pre-existing policy of condoning police misconduct that then give rise to the constitutional violation. *See Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991). But a plaintiff still cannot "establish ratification by deliberate indifference towards a single after-the-fact investigation." *Cole v. City of Emeryville Police Dep't*, 387 F. Supp. 2d 1084, 1101 (N.D. Cal. 2005). To the contrary, "courts in this circuit have stopped short of holding that a

11

plaintiff can prove *Monell* liability simply on the basis of a defendant department's post-incident ratification through failure to discipline or take other action concerning the officer directly involved." *Mueller v. Cruz,* No. 13-cv-01274-CJC, 2015 WL 9455565, at *3 (C.D. Cal. Dec. 23, 2015).

Without evidentiary support, Robinson identifies Chief Edgardo Garcia as the final policymaking official. *See* Opp'n at 5. Defendants assert that the City's Charter vests policymaking authority only with the City Manager. *See* Reply at 12. Robinson also fails to provide evidence showing that the true final policymaking official was aware that one of the defendant-officers used excessive force in arresting Robinson, and then explicitly approved of that decision.

Additionally, Robinson does not provide evidence of "Dote's contemporaneous admission that Plaintiff was merely 'passively non-compliant." *See* Police Report at 23–25 (Exhibit omits pages 23 and 25). Robinson did not include his cited evidence with Farzam's declaration. *See* Farzam Decl., Ex. E (Robinson cites page 36, but the exhibit contains only 35 out of 35 pages). Furthermore, a plaintiff must prove ratification through incidents and general practices separate from the sole incident at issue. *See Larez*, 946 F.2d at 647 ("LAPD's treatment of the Larezes' complaint tended to corroborate testimony about LAPD complaint investigations *in general* . . . pursuant to his two-year study of LAPD complaints . . ."). Therefore, Robinson's ratification claim is subject to summary judgment.

### 2. Inadequate Training – Claim 5

On Robinson's second theory of *Monell* liability, it is true that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Inadequacy of training may "serve as the basis for § 1983 liability," but only when a plaintiff can prove "deliberate indifference"— a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his

12

1  action." *Board of Comm'rs of Bryan County. v. Brown*, 520 U.S. 397, 410 (1997)
2  (requiring a pattern of similar constitutional violations under a failure-to-train theory).
3  This type of indifference may be shown when, for example, "policymakers are on actual or
4  constructive notice that a particular omission in their training program causes city
5  employees to violate citizens' constitutional rights" but still choose to retain that program.
6  *Connick*, 563 U.S. 51, 61. "A *pattern* of similar constitutional violations by untrained
7  employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of
8  failure to train." *Id.* (emphasis added) (quoting *Bryan Cty*, 520 U.S. at 409).

Under this theory, Robinson claims that a policy of inadequate training "can be reasonably inferred from the evidence. Opp'n at 17. Robinson argues that the City "failed to adequately train its police officers in (1) the circumstances that justify use of a takedown; and (2) the proper techniques in employ[ing] a takedown so as to prevent unnecessary and serious injury to subjects." *Id.* As evidence, Robinson points to each defendant officer's deposition testimony, and "official Use of Force data and reports . . . publicly available on SJPD's website" to show that the City inadequately trains its officers.[3]  Opp'n at 17–18.

### a. Deposition Testimony

Officer Dote testified that "it is justifiable and reasonable" to take an "argumentative or combative . . . or actively resisting" suspect into custody when "based on the totality of circumstances [] immediate action is required." Dote Depo. at 88:9–18. Officers Petterson and Kulik both testified that at the time of their depositions, they could not recall specific takedown maneuvers or techniques. *See* Petterson Depo at 98:20–23; *see also* Kulik Depo at 15:1–18:4; 70:8–12. Officer Kulik could only name one takedown maneuver when asked at her deposition. *Id.*

Both officers, however, testified consistently with the City's training officer in that

---

[3] The Court assumes that Robinson presents the Use of Force data and reports to support both his inadequate training claim and unconstitutional policy or custom claim. The Court will address this evidence in detail in relation to inadequate training.

1   the City trained them in takedowns and the proper use of force. *See* Dkt. No. 46-6 ("Sciba
2   Decl.") ¶¶ 7–9. All officers testified that they received formal training regarding
3   takedowns and use of force. Dote Depo. at 22; Dkt. No. 48-1, Ex. A at 22; Dkt. No. 48-1,
4   Ex. B at 15. Additionally, an individual officer's inability to recall the names of
5   maneuvers or to describe techniques on a particular occasion, does not prove that the City
6   failed to train all of its officers. Similarly, Officer Dote's understanding of the appropriate
7   circumstances for conducting a takedown does not prove that the City failed to train, nor
8   does it prove the City's deliberate indifference to widespread inadequate training.
9   Certainly, the defendant officers' depositions do not establish a *pattern* of similar
10  constitutional violations by untrained employees. *Connick*, 563 U.S. 51, 61.

### b.   Use of Force Data and Reports

Robinson argues that publicly available "Use of Force data" and reports, when viewed alongside the officers' deposition testimony, show the City's failure to adequately train officers to perform takedowns in a way that avoids injury. Opp'n at 18. Police Strategies, LLC compiled two reports (one in 2018 and one in 2020) using San Jose Police Department use of force data. *See* Farzam Decl. Ex. I ("2018 Report"), Ex. J ("2020 Report"). According to Robinson, these summary reports show that SJPD officers are more likely to inflict injury than other jurisdictions. Opp'n at 8.

First, Defendants object to the admissibility of these reports listing same grounds previously discussed. Defendants argue these reports should also be inadmissible because they lacked notice and an opportunity to conduct discovery on the reports' authenticity and reliability, citing *Wasco Prod.*, 435 F.3d 989, 992 (9th Cir. 2006) in support. Dkt. No. 48-1 Pritchard Decl. ¶4. *Wasco*, however, stands for the proposition that "summary judgment is not a procedural second chance to flesh out inadequate pleadings." 435 F.3d at 992. Here, the issue involves discoverable and publicly available documents being used as evidence in support of allegations made in the complaint, not a failure to allege fundamental elements of a claim. Thus, *Wasco* is inapplicable and the Court overrules Defendants' objection without prejudice to raising the objection in a motion in limine.

14

Nevertheless, Robinson's summary reports do not support his *Monell* claim. For example, Robinson points to the 2018 Report to show that "SJPD's overall suspect injury rate (44%) was significantly greater than the interagency average (30%). Opp'n at 7; 2018 Report at 43. But in the next line, the 2018 Report states that "SJPD is doing better than average in some risk areas. SJPD's use of force rate per 1,000 population is half of the interagency rate and SJPD officers are less likely to be involved in high Force Factor incidents." 2018 Report at 43. Additionally, Robinson points to the updated 2020 Report to show that the subject injury rate increased and continued to be "above average for all types of subject injuries except for canine bites and loss of consciousness." Opp'n at 8; 2020 Report at 35. Yet, that same report also observes the following trends: "The average annual number of force incidents per officer has fallen steadily from 2.9 to 2.3," and "the subject's use of deadly force fell from 3.4% to 0.3%." *Id.* at 21. Thus, the contents of these reports do not conclusively establish that any use of force is the result of the City inadequately training its officers.

The diverging trends in these reports undermines Robinson's argument. There may be various reasons for this shift in statistics, such as higher levels of crime in San Jose or a larger pool of incidents reported than in the other unidentified jurisdictions. *See Hinojosa v. Butler*, 547 F.3d 285, 296 (5th Cir. 2008) (that evidence of statistics can "beg more questions than they answer," making it unclear whether a fact finder should conclude that most complaints actually involved an officer using excessive force, or just that "the number of complaints filed [] is high relative to other metropolitan police departments"). Thus, Robinson has no evidence of a "pattern of similar constitutional violations by untrained employees" sufficient to place city policy makers on notice that "training is deficient in a particular respect." *Connick*, 563 U.S. at 61; *see also Bryan Cnty.*, 520 U.S. at 409.

Although Robinson provides evidence of SJPD using force in the past, his proffered evidence does not show that that force was unconstitutional or excessive. *See Johnson v. City of Vallejo*, 99 F. Supp. 3d 1212, 1220 (E.D. Cal. 2015) ("However, again, the

15

unconstitutionality of these actions has not been proven . . . Nevertheless, some evidence of constitutional violations is required to maintain the *Monell* claim in this case."). And aside from Sciba's declaration presented by Defendants, Robinson's record contains no evidence about the contents of SJPD officer training. Thus, the Court concludes that although there is evidence of use of force within San Jose Police Department, the evidence does not meet the stringent legal standards required for claims under *Monell*. Therefore, Robinson's inadequate training claim is subject to summary judgment.

### 3. Unconstitutional Custom, Policy, or Practice – Claim 6

Finally, Robinson's third theory of *Monell* liability is that the City maintains a widespread policy or custom of using excessive force. Generally, a municipality cannot be held liable under section 1983 "solely because it employs a tortfeasor." *Monell*, 426 U.S. at 691. Rather, section 1983 liability may be imposed only when a municipal "policy" or "custom" is the "moving force" behind a violation of federally protected rights. *Id.* at 694. "Liability for custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Robinson does not argue that there is an official municipal policy. He only argues that there is a "widespread custom" and "practice" of excessive force. Opp'n at 17. As a result, his third *Monell* theory is duplicative of his first two theories. Robinson argues that the Use of Force data reports suggest a "continuing, widespread practice of excessive force within the San Jose Police Department and a failure to adequately train officers to perform 'takedowns' to avoid injury, especially when viewed alongside Officer Petterson and Kulik's deposition testimony." Opp'n at 18. But Robinson provides no data on any patterns of SJPD's unconstitutional conduct, and Robinson's counsel apparently conducted no substantive discovery on this either. *See* Pritchard Decl. ¶¶ 2–6. As with the ratification and inadequate training arguments, the evidence is insufficient to support a *Monell* claim for unconstitutional custom or practice.

Finally, Robinson requests a stay on the Court's consideration of this motion for the *Monell* claims to allow him more time to obtain additional use-of-force data. Robinson's request is DENIED.

In sum, because Robinson offers insufficient evidence in support of any of his three *Monell* theories, the Court GRANTS Defendants' partial motion for summary judgment on municipal liability claims 4, 5, and 6.

## IV. CONCLUSION

Defendants' partial motion for summary judgment is DENIED as to Robinson's claims for excessive force against Officer Petterson and Officer Kulik. Partial summary judgment is GRANTED as to claims 2 and 3 under § 1983 against the officer defendants, and as to claims 4, 5, and 6 against the City of San Jose for insufficient evidence supporting *Monell* liability. These claims are DISMISSED and the City is therefore terminated as a defendant.

The following claims remain for trial: 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment against individual officer defendants Dote, Petterson, and Kulik.

**IT IS SO ORDERED.**

Dated: September 16, 2021

_____
NATHANAEL M. COUSINS
United States Magistrate Judge